UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMBER DAWN CUNNINGTON,<br><br>        Petitioner,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security Administration,<br><br>        Respondent. | Case No. 2:19-CV-00035-CWD<br><br>**ORDER** |

## INTRODUCTION

Before the Court is Amber Dawn Cunnington's Petition for Review of the Respondent's denial of social security benefits, filed on January 28, 2019. (Dkt. 1.) The Court has reviewed the Petition, Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the ALJ's decision and dismiss the Petition.[1]

## PROCEDURAL AND FACTUAL HISTORY

On March 29, 2016, Petitioner filed an application for Disability Insurance

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019, and is substituted in as the Respondent pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).

Benefits, alleging disability beginning on April 1, 2015. Petitioner's date last insured was December 31, 2015. Petitioner's application was denied initially and on reconsideration. A hearing was conducted on November 15, 2017, before Administrative Law Judge (ALJ) Marie Palachuk.

After considering testimony from medical expert Nancy Winfrey, Ph.D., a psychologist, Petitioner, and vocational expert Sharon F. Welter, the ALJ issued a decision on February 12, 2018, finding Petitioner not disabled during the period from the alleged onset date, April 1, 2015, through the date last insured, December 31, 2015. Petitioner's request for review by the Appeals Council was denied on December 4, 2018, making the ALJ's decision final. Petitioner timely filed this action seeking judicial review of the ALJ's decision under 42 U.S.C. § 405(g).

At the time of the hearing before the ALJ, Petitioner was 34 years of age. She is a high school graduate with two years of college and specialized training in massage therapy, as a medical assistant, and truck driving. (AR 182.) Petitioner has prior relevant work experience as a secretary, receptionist, log truck driver, and construction worker.

In 2014 and 2015, Petitioner began experiencing body aches and pains, joint swelling, and "spells" or "episodes" which Petitioner described as occurrences where her muscles would "flop around" uncontrollably. (AR 37.) Petitioner was referred to neurologist Marie Atkinson, M.D., who, in the fall of 2015, ruled out epilepsy but made no firm diagnosis, concluding only that Petitioner had a neurological muscular issue and severe right-side weakness. (AR 38, 598, 654.) Petitioner was then referred to neurology

and neuromuscular specialist Luis F. Pary, M.D., who, in approximately March or April 2016, diagnosed Petitioner with generalized dystonia. (AR 676, 885.) Ultimately, in 2017, Petitioner was diagnosed more specifically with dopa-responsive dystonia by Jessica R. Craddock, M.D., neuroimmunology. (AR 841, 955.)[2]

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date, April 1, 2015, through her date last insured, December 31, 2015.

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner to have four impairments meeting the definition of severe: 1) degenerative disc disease of the cervical spine, 2) migraines, 3) chronic pain, and 4) early evidence of dystonia. (AR 15.) The ALJ found Petitioner's hearing loss, gynecological disorder, and anxiety were non-severe impairments. (AR 15-16.)

Step three asks whether the claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for any listed impairments, specifically listings 1.04 (disorders of the spine) and 11.13 (muscular dystrophy). (AR 17.) The ALJ also considered the limiting effects of

---

[2] "General dystonia is a neurological movement disorder in which sustained muscle contractions cause twisting and repetitive movements or abnormal postures." *Britton v. Colvin*, 787 F.3d 1011, 1012 n. 1 (9th Cir. 2015). Dopa-responsive dystonia means Petitioner has a response to dopamine medications. (AR 40.)

Petitioner's chronic pain and migraines, which have no specific listings. If the claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ determined that on or before the date last insured, Petitioner retained the RFC to perform sedentary work as defined by 20 C.F.R. § 404.1567(a), except she must be allowed to alternate positions between sitting and standing for at least a brief period every 30-60 minutes. Petitioner can perform all postural activities occasionally, except she must never climb ladders, ropes, or scaffolds. Petitioner cannot reach overhead bilaterally, and must avoid all industrial noise, industrial vibration, and hazards. (AR 17-18.)

In making the RFC determination, the ALJ considered all of Petitioner's symptoms, the objective medical evidence, opinion evidence, and other relevant evidence in the record. The ALJ evaluated Petitioner's own statements and found Petitioner's impairments could reasonably be expected to cause the alleged symptoms, but that Petitioner's statements concerning the intensity, persistence, and limiting effects of the symptoms were inconsistent with the medical evidence and other evidence in the record prior to her date last insured. (AR 18, 20.) In making that finding, the ALJ discussed evidence in the record concerning Petitioner's symptoms beginning in April 2015 and continuing up to and following the date last insured. (AR 18-19.)

The ALJ also considered the records of Petitioner's treating physician, Dr.

Atkinson, to whom the ALJ gave great weight. (AR 21.) The ALJ gave little weight to the State agency medical consultants, concluding their opinions finding insufficient evidence to evaluate the claim prior to the date last insured to be inconsistent with other evidence in the record. (AR 20.) The ALJ gave little weight to the opinions of Dr. Craddock, Petitioner's treating neurologist beginning in May 2017, and to an April 2016 mobility assessment from Luka Gordon, Petitioner's physical therapist (PT), concluding both opinions were made after the date last insured and are inconsistent with Petitioner's statements made during the period of insured as well as with other evidence in the record. (AR 20-21.)[3] The ALJ gave little weight also to the non-medical opinion of Petitioner's husband, Ryan Cunnington, concluding Mr. Cunnington's statements were inconsistent with Petitioner's reports of improvement in her symptoms. (AR 21.)

In the RFC discussion, the ALJ concluded that Petitioner's symptoms of dystonia and migraine headaches were "well-controlled" as of the date last insured. (AR 19-21.)

The ALJ next found Petitioner was able to perform her past relevant work as a secretary and receptionist as defined in the Directory of Occupational Titles (DOT), #201.362-030 and #237.367-038, through the date last insured. (AR 21.) In making this finding, the ALJ compared Petitioner's RFC with the physical and mental demands of

---

[3] Petitioner does not challenge the ALJ's rejection of Dr. Craddock or PT Gordon's opinions nor the ALJ's evaluation of any of the physicians' opinions. The Court need only review those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Regardless, the Court finds the ALJ properly considered the records and opinion testimony of Dr. Craddock and PT Gordon. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (ALJ did not err in discounting treating physician's retrospective diagnosis based on reasons beyond that the diagnosis was made after the date last insured.).

those jobs as actually and generally performed. The ALJ also considered the vocational expert's testimony that Petitioner could still perform those two jobs within the limitations of the RFC. (AR 21-22.) Accordingly, the ALJ concluded the Petitioner was not disabled on or before December 31, 2015, her date last insured for Title II benefits. The ALJ, therefore, did not move to the fifth and final step of the process. (AR 22.)[4]

Petitioner argues the ALJ erred in concluding that Petitioner's symptoms of dystonia and migraine headaches were "well controlled" as of the date last insured and in evaluating Petitioner's symptom testimony. (Dkt. 13, 15.) As a result of those errors, Petitioner argues, the ALJ's decision is not supported by substantial evidence. The alleged errors are analyzed in turn below.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 522–23 (9th Cir. 2014). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold

---

[4] If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

The Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation omitted). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown–Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## ISSUES PRESENTED

Petitioner argues the ALJ's decision is not supported by substantial evidence, challenging 1) the ALJ's conclusion that Petitioner's symptoms were "well controlled"

and 2) the ALJ's evaluation of Petitioner's symptom testimony.

## DISCUSSION

**1.      The ALJ's Conclusion that Petitioner's Symptoms Were Well Controlled**

Petitioner challenges the ALJ's conclusion in the RFC determination that her symptoms of dystonia and migraine headaches were "well-controlled" prior to the date last insured. (Dkt. 15); (AR 17-21.) Petitioner disagrees with the ALJ, arguing the record as a whole shows that, while some of her then undiagnosed dopa resistant dystonia symptoms had subsided in the fall of 2015, Petitioner continued to experience other severe symptoms throughout the remainder of the insured period. Petitioner contends the various physicians treating her during the fall of 2015 used different terms to describe her symptoms but that, nonetheless, the records demonstrate she had continuing symptoms that were not well-controlled during the insured period. (Dkt. 13, 15.) Respondent maintains the ALJ's decision is supported by substantial evidence. (Dkt. 14.)

A claimant's RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs").

"At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (citing *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). Disability insurance benefits are

proper where the claimant demonstrates an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be determined to be disabled only where their physical or mental impairments are of such severity that they cannot do their previous work and are also unable, considering their age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The claimant "must establish that her disability existed on or before" the date last insured. *Tidwell*, 161 F.3d at 601; *see also Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991) ("[T]o obtain disability benefits, [a claimant] must demonstrate [she] was disabled prior to his last insured date."). As noted above, Petitioner's date last insured was December 31, 2015. Therefore, to be entitled to disability insurance benefits, Petitioner must establish she was disabled prior to or as of that date. *Id*.

In formulating an RFC, the ALJ must evaluate the claimant's physical, mental, and other abilities and limitations in the context of her capacity to engage in regular, continuing work activity. 20 C.F.R. §§ 404.1545(b), (c); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996). In doing so, the ALJ must consider "all of [a claimant's] medically determinable impairments," whether severe or not. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2).

The ALJ must also consider all relevant medical and other evidence when making

an RFC determination. *See* 20 C.F.R. §§ 404.1545(a)(1), (3). The ALJ weighs medical and other source opinions, as well as the claimant's credibility. *See, e.g.*, *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). In doing so, the opinion of a treating physician is favored over non-treating physicians and the opinions of examining physicians over non-examining physicians. *Orn*, 495 F.3d at 631; 20 C.F.R. § 404.1527. The ALJ must make findings regarding which record evidence to credit and must provide a detailed and thorough summary of the facts—including conflicting clinical evidence— that explains the ALJ's interpretation of that information. *Id.* at 632 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). The ALJ's findings must be supported by substantial evidence in the record as a whole. *Id.* at 630.

Here, there is substantial evidence in the record to support the ALJ's conclusion that the Petitioner's symptoms were "well-controlled" prior to the date last insured. The medical records from April 2015 to August 2015 show Petitioner was experiencing symptoms of frequent seizure-like episodes, tremors, migraines, and heart palpitations. Beginning in August 2015, however, the records reflect that, after Petitioner was prescribed and started taking propranolol, her tremors and migraines improved. (AR 407-411, 491-92, 501, 598, 601.) Specifically, Dr. Atkinson's October 29, 2015 progress notes state that, since Petitioner was placed on propranolol "she has not had any further fainting episodes," "[s]he denies any further episodes during the day or night," had "not had any migraines," and that Petitioner's "spells" had "subsided and no longer occur." (AR 601, 654, 657.) Dr. Lewis's records from August 2015 likewise indicate that

Petitioner was no longer having tremors, migraines, and seizure-like activities after starting propranolol. (AR 407-411.)

The records from Petitioner's treating physicians between August and December 2015, indicating Petitioner's symptoms, i.e., migraine headaches and tremors, had subsided with propranolol and were no longer occurring in the fall of 2015, contain substantial evidence supporting the ALJ's decision. (AR 598, 601.) The records also are consistent with Petitioner's testimony that her seizure-like episodes or spells, were more severe in 2015 until she was prescribed propranolol; explaining her episodes are "not as severe now" and that the propranolol "helped keep everything down a little." (AR 41, 45.)

While the records also show that Petitioner had frequent visits with her treating physicians throughout the fall of 2015 and continuing through the date last insured, which note she experienced some continuing symptoms and adjustments were made to her medications, including propranolol, the ALJ's conclusion that Petitioner's symptoms were well controlled is supported by the aforementioned evidence in the record. Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). Accordingly, the Court must find the ALJ's

conclusion that Petitioner's symptoms of dystonia and migraine headaches were well controlled as of the date last insured is supported by substantial evidence.

The Court further finds the ALJ's assessment that Petitioner retained the RFC to perform sedentary work with the noted limitations during the time prior to the date last insured is supported by substantial evidence. The ALJ took into account those limitations for which there was support in the record and the RFC finding was consistent with the records of Petitioner's treating physicians. The ALJ properly accounted for Petitioner's documented limitations in the RFC determination, by specifically addressing the postural and exertional limitations that existed prior to the date last insured. Notably, the ALJ empathized with Petitioner's current condition, and discussed the medical records following the date last insured, in her decision when concluding Petitioner had not established that her conditions or combination of conditions were disabling on or before the date last insured as required by the social security regulations. (AR 19.)

Unfortunately, Petitioner's disease is progressive and her condition declined shortly after the date last insured, as reflected in the medical records and discussed in the ALJ's decision. The ALJ's conclusion that Petitioner's symptoms were well-controlled as of the date last insured, however, is supported by substantial evidence in the record. The evidence of Petitioner's declining condition following the date last insured does not change the fact that the medical records from the relevant time period contain substantial evidence supporting the ALJ's decision. For these reasons, the Court finds no error by the ALJ.

## 2. ALJ's Evaluation of Petitioner's Symptom Testimony

Petitioner contends the ALJ erroneously discounted her symptom testimony as being unsupported by the medical evidence, arguing that, contrary to the ALJ's conclusion, the medical records show her symptoms were ongoing through the fall of 2015 to the end of the date last insured. (Dkt. 13, 15.) Respondent maintains that substantial evidence in the record supports the ALJ's assessment of Petitioner's subjective complaints about her symptoms. (Dkt. 14.)

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id.* "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *see also Molina*, 674 F.3d at 1112.

The ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. *Id.*

If a claimant produces objective medical evidence of an underlying impairment, the ALJ may not reject a claimant's subjective complaints of pain based solely on lack of

medical evidence. *Burch*, 400 F.3d at 680; *see also Molina*, 674 F.3d at 1112. Where the claimant satisfies the first step of this analysis, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036; *see also Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017).

In evaluating credibility, the ALJ may engage in ordinary techniques, including: considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas*, 278 F.3d at 958-59. The ALJ may also consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 16-3p.

A finding that a claimant lacks credibility cannot be premised solely on a lack of medical support for the severity of pain. *Lester,* 81 F.3d at 834. The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). Where the ALJ's credibility finding is supported by substantial evidence in the record, the finding will not be disturbed nor second-guessed by the Court. *Thomas,* 278 F.3d at 959. When the evidence can support either outcome, the court may not substitute its

judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Here, the ALJ concluded the Petitioner satisfied the first step of this analysis by showing that her medically determinable impairments could reasonably be expected to cause the alleged symptoms. There is no evidence of malingering. At the second step, therefore, the ALJ could "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036. This is not an easy requirement to meet---the clear and convincing standard is the most demanding required in Social Security cases. *Garrison*, 759 F.3d at 1014–15 (citations omitted) (internal quotation marks omitted). General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the Petitioner's pain complaints. *Reddick*, 157 F.3d at 722.

During the hearing before the ALJ in November 2017, Petitioner testified, that in 2014 and 2015, she had a lot of body aches and pains and started having these "attacks…where I just flop around, my muscles would just kind of do what they wanted to do." (AR 36-37.) Petitioner testified that those "spells" or "episodes" looked like seizures where her muscles would uncontrollably just "lock up" and she would "flop around." (AR 40.) Petitioner testified that, in the summer of 2015, she was unable to maintain employment because of these episodes and the associated pain. (AR 43.) She stated she had "good days and bad days" and that, on her worst days, she could not get out of bed, could not sleep or eat, was nauseated from the pain, and was unable to work approximately 18-20 days per month. (AR 43-44.) Petitioner went on, however, to testify

that her symptoms improved when she began seeing Dr. Atkinson in the fall of 2015 and that her episodes were more severe until she was prescribed propranolol to help with tremors and sinus tachycardia. (AR 41-45.)

The ALJ considered Petitioner's testimony but found her statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the medical evidence prior to the date last insured. (AR 18-20.) The ALJ discredited Petitioner's allegations concerning her dystonia symptoms in 2015 by pointing to the specific medical records discussed previously; namely, the August 2015 records showing that, after being placed on propranolol, Petitioner reported no tremors or migraines and Dr. Atkinson's October 2015 neurology consult note stating Petitioner's complaints of symptoms "no longer occurred" with the use of propranolol. (AR 19.) The ALJ also noted that Petitioner's April 2015 brain MRI was normal and her May 2015 EEG was unremarkable. (AR 18.)

Based on the above, the Court finds the ALJ set forth specific, clear and convincing reasons for rejecting Petitioner's symptom testimony. *Lingenfelter*, 504 F.3d at 1036; *Garrison*, 759 F.3d at 1014–15. In doing so, the ALJ identified what testimony she found not credible and what evidence undermined the claimant's complaints. *Reddick*, 157 F.3d at 722. While the evidence in the record may be susceptible to more than one rational interpretation, the ALJ's decision must be upheld where, as here, it is supported by substantial evidence. *Burch*, 400 F.3d at 679. The Court is not to "engage in second-guessing." *Thomas*, 278 F.3d at 959.

For these reasons, the Court finds the ALJ's determination that Petitioner's statements about her symptoms were not consistent with the medical record is supported by substantial evidence. Specifically, the records indicating Petitioner's symptoms of migraine headaches and tremors had subsided with propranolol and were "no longer occurring" in the fall of 2015. (AR 598, 601, 654, 657.) The Court will, therefore, reject this assignment of error and affirm the ALJ's decision.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

DATED: March 28, 2020

Honorable Candy W. Dale
United States Magistrate Judge